UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                          Plaintiff,

             v.

JOSUE NAVEDO,

                       Defendant.

_____

                    DECISION & ORDER and
                    REPORT & RECOMMENDATION

                    04-CR-6178T

## PRELIMINARY STATEMENT

By Order of Hon. Michael A. Telesca, United States District Judge, dated December 17, 2004, all pre-trial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(A)-(B).  (Docket # 2).

Defendant Josue Navedo ("Navedo") is charged in a three-count indictment.  The first count charges Navedo with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  The second count charges Navedo with possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  The final count charges Navedo with possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D).  (Docket # 1). Each count alleges that the charged crime occurred "[o]n or about October 13, 2004."  (Docket # 1).

Currently pending before this Court is Navedo's motion for disclosure of the identity of the government's confidential informant.  Also pending for a report and

recommendation by this Court is Navedo's motion to suppress tangible evidence, as to which an evidentiary hearing was held on May 18, 2005.  (Docket ## 16, 20).[1]  In addition, in his original motion papers, Navedo moved to suppress statements, but following the evidentiary hearing on May 18, he withdrew that motion.[2]  (Docket # 28 at 1).

At the hearing, Officer Ignacio Torres of the Rochester Police Department testified on behalf of the government.  No witnesses were called on behalf of the defense.  The following constitutes the findings of this Court.


## FACTUAL BACKGROUND

On October 13, 2004, at approximately 8:48 p.m., Officer Torres assisted in the execution of a search warrant at 38 Santee Street, in Rochester, New York.  (Tr. 5).[3]  Upon initial entry, the searching officers were advised by officers conducting surveillance of the perimeter of the residence that someone had been observed running into the attic.  (Tr. 10).  Based upon this information, the entering officers secured the first floor and immediately proceeded to the second level.  (Tr. 10).  Upstairs, Torres located the attic door and "called out verbal orders for persons to come down," apparently prompting two Hispanic males, later identified as Navedo and Julio

---

[1]  Navedo's omnibus motions also sought, *inter alia*, discovery and inspection pursuant to Rule 16 of the Federal Rules of Criminal Procedure.  (Docket ## 16, 20).  That motion was decided in open court by the undersigned on April 14, 2005.  (Docket ## 18, 19).

[2]  Certain statements allegedly were made by the defendant while he was present at the residence that was being searched pursuant to a warrant; other statements were allegedly made by him later that same evening at the Monroe County Public Safety Building.  As to the former, the government has represented that it does not seek to introduce those statements at trial in its direct case, and thus the defendant's motion as to them is moot.  It is the latter statements that Navedo no longer seeks to suppress.

[3]  The transcript of the suppression hearing conducted before this Court on May 18, 2005, shall hereinafter be referenced as "Tr. __."  (Docket # 25).

Vega, to exit the attic.  (Tr. 6-7, 10).  Security pat-downs of Navedo and Vega were conducted,

after which they were handcuffed and placed in the downstairs living room area.  (Tr. 10, 13).

Following the detention of Navedo and Vega, a search of 38 Santee Street was

conducted.  During the search, a handgun was located in an upstairs bedroom and an unspecified

quantity of cocaine and marijuana was also discovered.[4]  (Tr. 11).  Based upon the discovery of

the narcotics and the firearm, the officers decided to arrest both Navedo and Vega.  (Tr. 7).

Torres then initiated a conversation with the two individuals, who advised him

that they were cousins, that they did not reside at the residence, but that they were "just visiting."

(Tr. 7).  Torres also conducted a search of Navedo's person incident to his arrest.  (Tr. 7, 68).

During the search, Torres located fifteen dollars in cash in the front pocket of Navedo's pants and

nine dollars in cash in the left pocket of his hooded sweatshirt.  (Tr. 7-9).  In his right sweatshirt

pocket was a set of keys.  (Tr. 8).  After finding the keys, Torres attempted unsuccessfully to use

them to unlock the front door of 38 Santee Street.  (Tr. 67).  Torres then tested the keys on the

side door of the residence and discovered that one of the keys operated the deadbolt lock on that

door.  (Tr. 8, 67).

Navedo and Vega were subsequently transported to the Monroe County Public

Safety Building, where they were interviewed by Torres and Rochester Police Officer Justine

Havill.  (Tr. 13-14).  After obtaining biographical information from Navedo, Torres advised him

of his *Miranda* rights.  (Tr. 15, 20-21).  Following a verbal waiver of his rights, Navedo agreed to

speak with the officers and was interviewed.  (Tr. 20-24).  At the conclusion of his interview,

---

[4] The locations from which the cocaine and marijuana were seized were not revealed during the hearing.

certain of his oral statements were reduced to a written statement, which Navedo reviewed and signed.  (Tr. 25-27).

## DECISION AND ORDER

Navedo seeks disclosure of the identity of the government's confidential informant.  (Docket ## 16, 20).  The informant apparently participated in three controlled purchases of narcotics from 38 Santee Street, which occurred within the month preceding the warrant application, the last occurring a few days before the warrant issued.  A description of these purchases was included in the warrant application for 38 Santee Street.  Navedo argues that the identity of the informant is relevant to his defense that he did not sell narcotics from 38 Santee Street but, at the time of the search, was merely "in the wrong place at the wrong time." (Docket ## 16, 20).

The disclosure of a confidential informant's identity is within the sound discretion of the district court.  *DiBlasio v. Keane*, 932 F.2d 1038, 1042 (2d Cir. 1991).  The government is generally not required to disclose the identity of confidential informants.  *Roviaro v. United States*, 353 U.S. 53, 59 (1957).  In order to obtain such disclosure, the defendant must show that without it, he "will be deprived of a fair trial."  *United States v. Fields*, 113 F.3d 313, 324 (2d Cir.), *cert. denied*, 522 U.S. 976 (1997); *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988) (defendant entitled to identity of confidential informant only upon showing that it is essential or material to the defense), *cert. denied*, 489 U.S. 1089 (1989).  A defendant's mere suggestion that disclosure will be of assistance to the defense of the case is insufficient.  *Fields*, 113 F.3d at 324.  "[T]he district court must be satisfied, after balancing the competing interests

4

of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity." *Id.* (citing *Roviaro*, 353 U.S. at 62). Such a need is established, according to the Second Circuit, "where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." *United States v. Saa*, 859 F.2d at 1073.

In the instant matter, Navedo contends that the informant may be able to provide testimony favorable to the defense. Specifically, he argues that because the informant purchased narcotics from 38 Santee Street, he or she will be able to testify that Navedo was not the person from whom those purchases were made – a fact, Navedo contends, detracts from the government's case against him. For this reason, he maintains that disclosure of the informant's identity should be ordered or, in the alternative, that the court should examine the informant *in camera*. (Docket # 20 at 9).

As previously noted, Navedo has not been charged with any narcotics offenses on any dates other than October 13, 2004, the date the warrant was executed at 38 Santee Street.[5] As to that date, the government has not charged Navedo with any actual sale of narcotics, but has charged him with possession of the narcotics and firearm located during the search. Navedo's motion is premised upon two assumptions – one, factual and one, legal. First, it is premised on the assumption that the informant would be able to identify the individual from whom he bought narcotics on the three previous occasions as someone other than Navedo; second, it is premised on the assumption that such testimony would undermine the government's charges against

_____

[5] Indeed, at oral argument, the government represented that it did not intend to offer proof at trial of the alleged earlier sales from that location. Should the government's intention change, the defendant may renew his motion for disclosure of the informant's identity before the district court.

Navedo and hence be "significant" within the meaning of *United States v. Saa*, 859 F.2d at 1073. As to the latter assumption, although the government disagrees with its potency, Navedo plainly has the right to pursue such a defense if he believes it may be availing. *See Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) (due process provides defendant the right to a "fair opportunity to defend against the state's accusations").

As to the factual assumption, however, the government has represented that the informant "was unable to see or identify the person who sold him/her drugs on the three dates . . . other than to identify the voice was male." (Docket # 21 at 2). While Navedo is not required to accept the government's representation at face value, it does weigh in my decision regarding the timing of disclosure. Because it appears that the informant's testimony will not likely advance the contemplated defense, I find that the benefits of disclosure of the informant's identify at this time do not outweigh the government's interest in protecting the informant. The government should, however, disclose to the defense within ten days of the date of this Order any reports of the informant's purchases on the three specified dates and advise the defense in writing whether the purchases were audio or video recorded. If it appears to the defendant, following review of such information, that the informant may be able to provide identifying information concerning the persons with whom he dealt, then Navedo may renew his motion for disclosure. The government is also directed to make the informant available to the district court for *in camera* examination at the pretrial conference should the court determine that examination of the informant's ability to identify the seller of narcotics on the three earlier dates is appropriate. Accordingly, Navedo's motion for disclosure of the confidential informant's identity is granted in part and denied in part.

**REPORT AND RECOMMENDATION**

**I.  Motion to Suppress Evidence Seized from 38 Santee Street**

Navedo moves to suppress the evidence seized pursuant to the execution of the search warrant for 38 Santee Street on the grounds that the affidavit offered in support of the warrant was unsupported by probable cause.  (Docket ## 16, 20).  The government opposes Navedo's motion, claiming that he lacks standing to contest the validity of the warrant.  (Docket ## 17, 21).

A defendant seeking to suppress evidence must demonstrate by a preponderance of the evidence that he had a reasonable expectation of privacy in the location or items searched. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *United States v. Perea*, 986 F.2d 633, 639 (2d Cir. 1993); *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991).  This expectation of privacy must be both subjectively and objectively reasonable – that is, the defendant must have a subjective expectation of privacy and that expectation must be one that is deemed objectively reasonable by society at large.  *United States v. Fields*, 113 F.3d 313, 320 (2d Cir.), *cert. denied*, 522 U.S. 976 (1997); *United States v. Osorio*, 949 F.2d at 40.  Courts generally evaluate standing by considering "whether the defendant had any property or possessory interest in the place searched or the items seized."  *Id.* (citations omitted).

As noted above, the burden of establishing standing falls squarely upon the defendant.  *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).  This burden "is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge.  A defendant's unsworn assertion of the Government's representations does not meet

this burden." *United States v. Montoya-Eschevarria*, 892 F. Supp. 104, 106 (S.D.N.Y. 1995) (citations omitted).

In the instant case, it is not clear that Navedo has sufficiently demonstrated that he had a reasonable expectation of privacy in the premises at 38 Santee Street.  Navedo has submitted an affidavit stating merely, "I was not the owner, tenant, or person in control of 38 Santee Street.  I was merely an invitee who was in the wrong place at the wrong time."  (Docket ## 16, 20).  His affidavit is silent as to any facts illuminating the nature of the invitation, such as, from whom it issued, its duration and its frequency.  Without more, I am skeptical that the affidavit's assertions meet Navedo's burden of establishing that he had a subjective expectation of privacy in the premises, let alone that such expectation was objectively reasonable.  *See Minnesota v. Carter*, 525 U.S. 83, 90 (1998) ("an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not"); *United States v. Majors*, 328 F.3d 791, 795 (5th Cir. 2003) ("[defendant] lacked standing to contest the existence of the warrant, since he was neither an owner nor occupant of the house, but merely a visitor"); *United States v. Fields*, 113 F.3d at 321 ("[s]ociety generally recognizes the legitimacy of privacy expectations held by guests who . . . have been invited to the premises by their host *for an extended visit*") (emphasis added).

In any event, even if Navedo had standing to challenge the search, his argument that the warrant was unsupported by probable cause is unavailing.  The affidavit offered in support of the warrant detailed three controlled purchases by a confidential informant known to the affiant to have provided reliable information in the past.  According to the affidavit, on three occasions, the last of which occurred five days before the warrant issued, the confidential

informant, under the observation of law enforcement, approached the rear of 38 Santee Street and returned a short while later with a small ziplock bag containing cocaine.  According to the informant, on each occasion, he knocked on a window at the rear of the house, an unknown male responded to the window and provided the informant with cocaine in exchange for $20.

Based upon the three reported controlled purchases, I find it reasonable for the issuing court to have concluded that probable cause existed to believe evidence of narcotics trafficking would be found at 38 Santee Street.  *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place"); *see also United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) ([a] reviewing court's obligation is merely to determine that the issuing judge had a "'substantial basis for... conclud[ing]' that probable cause existed") (quoting *Gates*, 462 U.S. at 238-39).

Furthermore, Navedo has failed to offer any evidence that the searching officers did not rely on the warrant in good faith.  *See United States v. Leon*, 468 U.S. 897 (1984).  There is nothing to suggest that the issuing court was knowingly misled or that he wholly abandoned his judicial role.  *See id.* at 923.  Nor was the warrant so facially deficient or so lacking in probable cause that reliance upon it would have been unreasonable.  *See id.; United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995) (citations omitted).  Accordingly, it is my recommendation that Navedo's motion to suppress evidence seized from 38 Santee Street be denied.

## II.  Motion to Suppress Evidence Seized Pursuant to Search of Navedo's Person

Navedo further seeks to suppress evidence seized from his person following his detention and arrest at 38 Santee Street.  (Docket ## 16, 20).  The law is well-settled that police have the authority to detain occupants of a premises while a search warrant is being executed. *See Michigan v. Summers*, 452 U.S. 692, 705 (1981) ("a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted"); *see also United States v. Fullwood*, 86 F.3d 27, 29-30 (2d Cir.) (permissible for officers to handcuff and detain defendant while they conducted a search of his premises pursuant to valid search warrant), *cert. denied*, 519 U.S. 985 (1996).  Here, as discussed above, law enforcement obtained a warrant authorizing the search of 38 Santee Street.  At the time of the search, Navedo and Vega were the only people present at the residence, and they were detained as the search was conducted.

Following the discovery of the narcotics and firearm during the search, Navedo and Vega were arrested, a decision that Navedo does not challenge in his motion papers.  (Tr. 7, 61, 68).  Navedo was then searched upon his arrest, and cash and a set of keys were discovered in his pockets during the search.  (Tr. 7-9).  Torres took the keys and, using them, determined that they operated the side entrance at 38 Santee Street.  (Tr. 8, 67).  It is this removal of the keys from Navedo's pocket and insertion of them into the locks that Navedo contends was unconstitutional.  (Docket # 28 at 2).  (Tr. 61-62).

As Navedo admits, assuming probable cause existed for his arrest – a proposition he does not challenge – that arrest authorized the arresting officers to search him without a further determination of probable cause for the search.  *United States v. Robinson*, 414 U.S. 218,

10

235 (1973) ("[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification").  The rationale for such searches incident to arrest is twofold: to remove weapons that could endanger the officers and to preserve evidence that could be concealed or destroyed.  *Chimel v. California*, 395 U.S. 752, 762-63 (1969).  An item found during the search may be seized as "evidence" if there exists a "nexus . . . between the item to be seized and criminal behavior."  *Warden v. Hayden*, 387 U.S. 294, 306-307 (1967) ("in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction); *see Arizona v. Hicks*, 480 U.S. 321, 327 (1987) ("[d]ispensing with the need for a warrant is worlds apart from permitting a lesser standard of *cause* for the seizure than a warrant would require").  Navedo apparently contends that the required nexus between the keys and criminal activity was lacking.

I disagree.  First, I find that considering the circumstances of Navedo's arrest – his presence, along with one other individual, in a residence in which narcotics and a firearm were found and his flight into the attic when the officers arrived to execute the warrant – established cause to believe that the keys in his pocket would aid in his conviction because they could establish his connection to the residence.[6]  *See United States v. Concepcion*, 942 F.2d 1170, 1172 (7th Cir. 1991); *United States v. Reyes*, 1990 WL 201345, *3 (S.D.N.Y. 1990); *United States v. Shelton*, 742 F. Supp. 1491, 1497 (D. Wyo. 1990).

---

[6] Had the keys been located in the residence, the warrant would have authorized their seizure.  (*See* Docket # 21, Ex. 1).

The keys were, moreover, clearly incriminating as soon as the officers determinated that one fit the lock of 38 Santee Street, a discovery that was made within moments after they were found in Navedo's possession.  Such a brief interruption in Navedo's possessory interest in the keys, which served the legitimate purpose of determining their evidentiary value, should not be viewed as an unreasonable seizure under the Fourth Amendment, *see*, *e.g.*, *United States v. Place*, 462 U.S. 696, 706 (1983) ("some brief detentions of personal effects may be so minimally intrusive of Fourth Amendment interests that strong countervailing governmental interests will justify a seizure based only on specific articulable facts that the property contains contraband or evidence of a crime"); *United States v. Concepcion*, 942 F.2d at 1172 ("[i]t does not follow, however, that the agents need a warrant or even probable cause to put a key into a lock"); nor should their insertion in the lock be viewed as constitutionally impermissible,[7] *see*, *e.g.*, *United States v. Salgado*, 250 F.3d 438, 456 (6th Cir.) ("the mere insertion of a key into a lock, by an officer who lawfully possesses the key and is in a location where he has a right to be, to determine if they key operates the lock, is not a search"), *cert. denied*, 534 U.S. 936 (2001); *Concepcion*, 942 F.2d at 1173 ("[a]lthough the owner of a lock has a privacy interest in a keyhole – enough to make the inspection of that lock a "search" – the privacy interest is so small that the officers do not need probable cause to inspect it"); *United States v.* Lyons, 898 F.2d 210, 213 (1st Cir.) ("insertion of the key [seized from defendant incident to his arrest] into the padlock was not a search"), *cert. denied*, 498 U.S. 920 (1990); *United States v. DeBardeleben*, 740 F.2d 440, 445 (6th Cir.) ("The mere fact that a police officer has lawful possession of a citizen's key does not

---

[7]  As previously stated, this Court is doubtful that Navedo's affidavit sufficiently establishes his standing to object to the search of the premises; if he does not have standing to object to the search, he similarly lacks standing to object to the testing of the locks in the residence.

confer an unlimited license to use it.  However, the legitimate interests of proper crime investigation allow [the insertion of the key into a vehicle's lock to determine if it fits.]") (quotation omitted), *cert. denied*, 469 U.S. 1028 (1984); *United States v. Grandstaff*, 813 F.2d 1353, 1358 (9th Cir.) (insertion of key seized from defendant at time of arrest into vehicle lock was "reasonable" search under Fourth Amendment), *cert. denied*, 484 U.S. 837 (1987).

      Alternatively, although Torres did not testify at the hearing concerning his reasons for seizing the keys, it seems reasonable to this Court that they could have been seized permissibly because of their potential to be used as a weapon.  *See*, *e.g.*, *United States v. Robinson*, 414 U.S. at 234 ("The justification or reason for the authority to search incident to arrest rests quite as much on the need to disarm the suspects in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial"); *Saillant v. City of Greenwood*, 2003 WL 24032987, *6 (S.D. Ind. 2003) ("The court readily grants that, depending on their size and shape, keys may be wielded as a weapon, just like any other sharp, hard object").  For these reasons, this Court finds Navedo's motion to suppress the keys to be without merit and recommends that it be denied.

## CONCLUSION

      For the foregoing reasons, it is my decision and order that defendant's motion for the disclosure of the identity of the government's confidential informant **(Docket ## 16, 20)** is **GRANTED in part** and **DENIED in part**.  It is also my report and recommendation that

defendant's motions to suppress evidence seized from 38 Santee Street and from his person

**(Docket ## 16, 20)** be **DENIED**.


                                             *s/Marian W. Payson*
                                                 MARIAN W. PAYSON
                                      United States Magistrate Judge

Dated: Rochester, New York
           August  29 , 2005.

14

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[8]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                              _s/Marian W. Payson_____
                                                  MARIAN W. PAYSON
                                              United States Magistrate Judge

Dated: Rochester, New York
            August   29   , 2005.

---

[8]  Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed.  *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).