UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                 Plaintiff,

                                                                              DECISION AND ORDER

                                                                              04-CR-6178L

            v.

JOSUE NAVEDO

                                 Defendant.
_____

On March 17, 2006, a jury found defendant Josue Navedo ("Navedo") guilty of, *inter alia*, possession of cocaine base (Count 3) and possession with intent to distribute cocaine base (Count 2). In response to the Court's special interrogatories, the jury also made specific findings regarding drug quantity, as required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Thomas*, 274 F.3d 655 (2d Cir.2001) (*en banc*). The jury found that defendant knowingly possessed "in excess of 5 grams of cocaine base" and knowingly possessed with intent to distribute "at least 5 grams of cocaine base." (Dkt. #62, Verdict Form, pp. 2-3).

Defendant has moved for judgment of acquittal and/or a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33. (Dkt. #68). Defendant's motion is granted in part and denied in part. Although I find that a rational jury could conclude that defendant both possessed and possessed with intent to distribute a "detectable amount" of cocaine base beyond a reasonable doubt,

I conclude that insufficient evidence supports the jury's verdict regarding drug quantity in excess of 5 grams.

*Judgment of Acquittal Pursuant to Rule 29*

A motion for judgment of acquittal under Rule 29 based on insufficient evidence should be granted only if, viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in its favor, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. FED. R. CRIM. P. 29; *United States v. Reyes*, 302 F.3d 48, 52 (2d Cir.2002). "A defendant who challenges the sufficiency of the evidence to support his conviction 'bears a heavy burden.'" *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir.2003) (quoting *United States v. Finley*, 245 F.3d 199, 202 (2d Cir.2001)). A judgment of acquittal is warranted only when the "evidence that the defendant committed the crime alleged was nonexistent or … meager." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir.1999) (internal quotations omitted).

Applying these principles, and viewing the evidence in a light most favorable to the Government, I conclude that the jury's verdict that defendant possessed "in excess of 5 grams" of cocaine base, and possessed with intent to distribute "at least 5 grams" of cocaine base, is based on speculation and conjecture and is not supported by proof beyond a reasonable doubt.

*Drug Quantity Based on Constructive Possession of the Hidden Drugs*

The objective facts are not in dispute and familiarity with those facts is assumed. In sum, Navedo, an 18-year-old young man with no prior record, was found inside a drug house, with

another person, his cousin, when the police executed a search warrant for 38 Santee St. in Rochester, New York. Navedo was charged, his cousin was not. Navedo did not testify at trial and the only direct evidence concerning his connection with the premises was his oral and written statement given to the arresting officers on October 13, 2004. (Government Ex. 80). Navedo's statement claimed he was in the "wrong place at the wrong time." A friend named "Rock" invited him to the house, and he went there to buy marijuana. When he entered the house, he claimed he saw marijuana, a quantity of crack cocaine, and a black gun on the table in the kitchen. He denied possession of any of those items and claimed that he and his cousin were left at the premises when "Rock" left to get some food. A short time later, the police arrived and Navedo panicked, and attempted to dispose of the drugs and weapon that were there in plain view.

The police testimony at trial corroborated Navedo's actions. They did find the gun where Navedo had hidden it and also found drugs and packaging material that had been deposited in the toilet. No drugs were found in plain view.

In executing the search warrant, the police also found a quantity of drugs on top of one of the kitchen cabinets (the "hidden drugs"). These hidden drugs, packaged for sale, contained in excess of 22 grams of cocaine base. Although there was no detectable amount of cocaine found in plain view, the Government contends that the jury could have found drug quantity exceeding 22 grams of crack cocaine based on the hidden drugs, that were not in plain view and not referenced by Navedo in his statement. I disagree. The jury's finding regarding the quantity of cocaine base defendant allegedly possessed cannot be based on the hidden drugs because there was no evidence that defendant *knowingly* possessed those drugs. In his statement to the police, defendant makes no mention of the hidden drugs, and unlike the drugs on the kitchen table, defendant does not admit to

taking actual possession of them or exercising any dominion and control over them. They were not in plain view, and were found only after the police carefully searched the premises.

Possession of drugs, of course, can be established by proof of constructive possession. "To establish constructive possession, the government must demonstrate that [the defendant] had the power and intention to exercise dominion and control over the [drugs]." *United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004) (internal quotations omitted); *see also United States v. Pelusio*, 725 F.2d 161, 167 (2d Cir.1983). Here, there is no evidence that defendant had any power or intention to exercise dominion and control over the hidden drugs.

In order to justify the jury's conclusion that 5 grams or more were possessed, the Government must rely on the hidden drugs. There was no evidence as to the quantity of drugs sitting in plain view when Navedo arrived at the premises with his cousin and Rock. Obviously, since the drugs were destroyed, there was no way for the police to quantify the amount. If the hidden drugs are excluded, there is no basis whatsoever to find that 5 grams or more were possessed by Navedo.

The Government argues that a rational jury could have found that defendant constructively possessed the hidden drugs because defendant was found inside a known drug house in which there was evidence of drug trafficking, including surveillance cameras, barricaded windows and doors, a crock pot with hot oil on the stove, and plastic bags used for distribution. Further, the defendant's conduct when the police entered the house, disposing of drugs, hiding a firearm, and hiding in an attic, is further evidence that he was a knowing participant in the drug trafficking operation at 38 Santee St. He also was found with a key to the side door of the house in the pocket of his sweatshirt.

However, there was no evidence that defendant had any knowledge that the hidden drugs were on top of the kitchen cabinet or that he had any intention to exercise dominion and control over them. As the Second Circuit recently stated in *United States v. Paulino*, 445 F.3d 211, 222 (2d Cir.2006), "a defendant's knowledge and intent are crucial to determining whether he exercised constructive possession over an item: 'Constructive possession exists when a person . . . *knowingly* has the power and the *intention* at a given time to exercise dominion and control over an object, either directly or through others.'" (quoting *United States v. Gordils*, 982 F.2d 64, 71 (2d Cir.1992) (emphasis in original)); *see also United States v. Teague*, 93 F.3d 81, 84 (2d Cir.1996) (to prove possession the Government must adduce evidence showing that defendant "*knowingly* [had] the power and the intention . . . to exercise dominion and control over the cocaine") (internal quotation marks omitted) (emphasis added); *accord United States v. Hamilton*, 142 F.3d 440 (7th Cir.1998) (Table Decision) ("constructive possession exists when another person has physical control of an object but the defendant *knows of its presence* and has the power to exercise control over it.") (emphasis added).

The hidden drugs were not in plain view. In this respect, this case is different from those in which a person is found inside a drug house where evidence of distribution and drugs are found in plain view and out in the open. *See Gordils*, 982 F.2d at 71-72 (evidence was sufficient to convict defendant of possession of heroin because jury could have reasonably concluded that defendant knowingly had the power and intention to exercise dominion and control over heroin found in apartment, based on the discovery of "heroin, glassine envelopes, diluents, and other materials used to prepare heroin for distribution *lying in plain view* in living room in which [defendant] was sitting."); *United States v. Soto*, 959 F.2d 1181, 1185 (2d Cir.1992) (finding sufficient evidence to

support conviction for possession with intent to distribute cocaine based on the fact that defendant was found in an "apartment with large quantities of narcotics *in plain view*.").

In addition, the Government did not offer any evidence to show that defendant exercised any dominion or control over the hidden drugs. The jury's verdict regarding drug quantity cannot be based on speculation that defendant's proximity to the hidden drugs means that he must have known about them. Mere proximity to the hidden drugs is insufficient to prove constructive possession. *See Rodriguez*, 392 F.3d at 548-49 (evidence that defendant was in close proximity to a box containing heroin was insufficient to prove his knowing, constructive possession of the heroin; "the government did not offer evidence to show that [defendant] exercised dominion or control over the box containing the heroin, a necessary predicate to a constructive possession finding."). The Government's statement in its closing and in its brief in response to defendant's Rule 29 motion that "defendant could have possibly hidden the drugs on top of the cabinet himself," (Dkt. # 70, p. 9), demonstrates the speculative nature of the Government's position. The fact Navedo might "possibly" have done something allows the jury to speculate.

Even when viewed in a light most favorable to the Government, there was insufficient evidence at trial to prove beyond a reasonable doubt that defendant *knowingly* possessed the hidden drugs. In fact, the evidence equally supports an inference that defendant *did not know* about the hidden drugs. In his statement to police, defendant admits to trying to destroy an unspecified quantity of drugs located on the kitchen table. It makes little sense for the defendant to flush this quantity of drugs down the toilet if he knew that a significant quantity of crack cocaine was located on top of the kitchen cabinet. The fact that defendant did not attempt to destroy the hidden drugs, and that no mention of the hidden drugs is made in his statement to police, supports the conclusion

Case 6:04-cr-06178-DGL-MWP   Document 75   Filed 08/10/06   Page 7 of 13

that defendant did not knowingly possess them. *See United States v. Jones*, 393 F.3d 107, 112 (2d Cir.2004) (holding that evidence was insufficient to support convictions for conspiracy and possession with intent to distribute drugs where any one of several inferences "is plausible, but on this record, none is established beyond a reasonable doubt.").

Nor was there evidence that defendant was an active participant in the prior drug sales from 38 Santee St. His statement to Officer Torres was that he was not involved in the business of drug distribution, but was there to buy and smoke marijuana. At trial, Officer Torres testified that he believed the defendant's statement that defendant was in the "wrong place at the wrong time." During cross-examination, he testified: "I believe he [Navedo] was being 100% honest with me."

Even if the jury rejected defendant's statement to Torres, and found that he had knowledge that drug sales were taking place at 38 Santee St., knowledge of drug activity by others is insufficient to establish beyond a reasonable doubt that *defendant* knowingly possessed the hidden drugs. There was stipulated testimony that drug sales occurred at the premises but the race of the person distributing the drugs is inconsistent with Navedo's race and ethnicity.[1] It is well-settled that "mere presence at the location of contraband does not establish possession." *United States v. Rios*, 856 F.2d 493, 496 (2d Cir.1988) (per curiam). That defendant was located in a known drug house, therefore, is not sufficient to support his guilty conviction beyond a reasonable doubt that he knowingly possessed any and all quantities of drugs that were found anywhere in the location of the drug house, whether in plain view or hidden.

---

[1] The testimony was that none of the individuals purchasing drugs saw the face of the distributor.

The Government relies on *United States v. Brett*, 872 F.2d 1365 (8th Cir. 1989) to support its contention that there is sufficient evidence that defendant constructively possessed the hidden drugs. In *Brett*, defendant Gray was seen fleeing a known drug house in which 46 grams of cocaine, a large amount of cash, a gun and ammunition were found. Gray was found hiding under a porch two houses away and next to him was $300 in cash. He was also found in possession of an additional $3,746 in cash and he had a key to the front door of the drug house in his pocket. When asked, he denied to the arresting officers that the key was to the drug house, but it was later determined to be the front door key. In addition, defendant lied to police about his identity by giving them a false name (which he failed to correct for almost a month after his arrest) and he gave no explanation as to how he was in possession of over $4000 in cash, particularly because he claimed that he was unemployed. Under these circumstances, the Eighth Circuit Court of Appeals held that there was sufficient evidence to support defendant Gray's conviction for conspiracy to distribute cocaine and possession with intent to distribute cocaine.

Here, however, defendant told police that he did not know how the keys to the house ended up in his sweatshirt pocket; there was no evidence that any of the other keys on the key ring were connected to any property owned or leased by defendant; defendant had only $26 in cash in his pocket; and he claimed that a man named "Rock" lived at Santee St. and that he was merely an invited guest at the house.

The evidence at trial also did not connect the defendant, an 18-year-old young man with no prior criminal convictions, to the drug-selling operation from 38 Santee St. A fingerprint found on a beaker used for cooking cocaine inside the house did not belong to the defendant; an RGE bill was addressed to someone other than defendant; the defendant was not the subscriber of a cell phone

- 8 -

found in the house; the registered owner of the handgun was never identified; and the handwriting on the ledger in the kitchen showing purchasers of crack by number designation was not that of the defendant. There was evidence of past sales of crack cocaine from a window in the house to a confidential informant by a black male, but no evidence that defendant (who was Hispanic) made any sales himself.

There was insufficient evidence to show that defendant had the kind of dominion and control over 38 Santee St. to support the jury's verdict that he constructively possessed the hidden drugs found therein.[2] The only reasonable view of the trial evidence is that defendant was *not* the sole owner or occupant of 38 Santee St. and did not have sufficient dominion and control over the premises to be found guilty beyond a reasonable doubt of knowingly possessing all the drugs found in the house under a theory of constructive possession. *Cf. Paulino,* 445 F.3d at 222 (defendant's "statement to arresting officers that the bedroom was used *solely by him* coupled with the presence of drug paraphernalia in plain view strongly supported an inference that he had such knowledge and intent" to exercise power over cocaine found in the bedroom closet.) (emphasis added). There was evidence that people other than the defendant had access to and exercised dominion and control over 38 Santee St. and the drugs found therein, and in fact had conducted drug sales from the house. In his statement to police, defendant said that Rock, a black male, claimed that he lived at 38 Santee St. Moreover, defendant's cousin, Julio, was also found hiding inside 38 Santee St. and was arrested with defendant, but never formally charged.

---

[2] Moreover, the Government did not request, and the Court did not instruct, that the jury could find defendant guilty of possession of drugs based on evidence that defendant had sufficient dominion and control over the premises where the drugs were found.

In *United States v. Gaviria*, 740 F.2d 174 (2d Cir.1984), the Court held that there was sufficient evidence to support a conviction that defendant constructively possessed cocaine with the intent to distribute it when the evidence showed that the apartment where the drugs were found was leased in defendant's name; that defendant possessed the keys to the apartment; and that a key from defendant's key ring opened a metal box found in the apartment which contained a substantial quantity of cocaine. Here, however, none of the indicia of dominion and control over the premises exists to support the jury's finding regarding drug quantity based on the hidden drugs here.

Instead, it is clear that the jury *assumed* that defendant *must have known* of the hidden drugs because he was found inside a well-fortified drug house, was found with a key to that house in his pocket, and admitted to having actual possession of an unspecified quantity of other drugs that he attempted to destroy when the police executed the search warrant.

I find that no rational jury could find that the Government proved beyond a reasonable doubt that defendant constructively possessed the hidden drugs based on this evidence. That is speculation, and it is insufficient to support the jury's finding that defendant knowingly possessed "at least" or "in excess of" 5 grams of cocaine base. No large quantity of cash was found with the defendant, no significant evidence of drug trafficking was in plain view, as was the case in *Gordils*, *Soto*, and *Brett*, and there was no evidence that defendant was the sole or even joint owner or occupant of 38 Santee St. At best, the evidence was that defendant had been at 38 Santee St. two or three times in the past.

Importantly, defendant was not charged with conspiring with others to possess or to distribute cocaine base. *See, e.g., Gordils, Brett*, *supra*. If that were the case, defendant might have been held accountable for all quantities of contraband which were within the scope of the criminal

activity that he jointly and knowingly undertook with others - here with "Rock", Julio, or unknown others who conducted past sales from the house. *See Jackson*, 335 F.3d at 181(finding that evidence supported defendant's conviction for conspiring to import 5 or more kilograms of cocaine because "[u]nder well-established law, Jackson was responsible not only for the cocaine that he himself conspired to import but also for the cocaine his co-conspirators conspired to import, provided he knew of his co-conspirator's illicit activities or the activities were reasonably foreseeable by him."). But, Navedo was not charged with conspiracy and the Government did not proceed on that theory.

Therefore, I find that no rational jury could conclude beyond a reasonable doubt that defendant possessed or possessed with intent to distribute the 22 grams of cocaine base found on top of the kitchen cabinet. Accordingly, the jury's verdict regarding drug quantity on Counts 2 and 3 cannot be based on these particular drugs.

*Drug Quantity Based on the Cocaine Base on the Kitchen Table*

The only evidence regarding *any* quantity of cocaine base that defendant *knowingly* possessed is found in defendant's own statement to police. In that statement, defendant claims that when he arrived at 38 Santee St. on October 13, 2004, he saw an unspecified amount of "money, weed and crack" on the kitchen table, none of which he claimed belonged to him. When police arrived to execute the search warrant, defendant "ran into the kitchen knowing there was (sic) drugs on the table" and "grabbed everything," and he "tried to shoot it away in the toilet downstairs." He admitted that "drugs and money went into the toilet."

Defendant's statement is silent, however, regarding the *amount* of crack cocaine that he saw on the kitchen table and flushed down the toilet. There was no other testimony or evidence

produced at trial regarding the amount of crack cocaine that was on the kitchen table or flushed down the toilet. The Government introduced evidence that, after searching the toilet and the plumbing, the police did not recover any amount of crack cocaine. The evidence regarding the *quantity* of crack cocaine that was on the kitchen table and then flushed, therefore, is "nonexistent." *Guadagna*, 183 F.3d at 130.

Based on defendant's statement, it was clearly rational for the jury to conclude that defendant knowingly possessed the crack cocaine on the kitchen table. Defendant admitted to taking actual physical possession of the crack cocaine and exercising dominion and control over it by disposing of it in the toilet.

Based on defendant's statement, any rational juror could conclude beyond a reasonable doubt that defendant possessed and possessed with intent to distribute *a detectable amount* of cocaine base. Defendant's motion for judgment of acquittal on Counts 2 and 3, therefore, is denied.

I find, however, that no rational juror could conclude beyond a reasonable doubt that defendant possessed anything other than a detectable amount of cocaine base. It was sheer speculation for the jury to find that defendant possessed "in excess of 5 grams" and possessed with intent to distribute "at least 5 grams" of crack cocaine based on the admissions defendant made in his statement to police, and the other evidence at trial. The evidence regarding *the amount* of crack cocaine defendant knowingly possessed is insufficient to support the jury's findings regarding drug quantity with respect to Counts 2 and 3.

In light of the absence of any evidence regarding the weight or amount of the cocaine base from the kitchen table that defendant admitted flushing, defendant is entitled to a judgment of acquittal as to the jury's two findings on Counts 2 and 3 regarding drug quantity.

Finally, defendant has failed to show any basis to support his motion for a new trial pursuant to Rule 33, and it is denied.

**CONCLUSION**

Defendant's motion for judgment of acquittal (Dkt. #68) is granted in part and denied in part. The jury's verdict finding defendant guilty of Counts 2 and 3 is supported by substantial evidence. The defendant is entitled to a judgment of acquittal as to the jury's findings regarding drug quantity on Counts 2 and 3. Defendant's motion for a new trial is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       August 9, 2006.